GEORGE HAISS MFG. CO., Inc., v. LINK BELT CO.

District Court, E. D. Pennsylvania.    July 3, 1928.

. No. 3625.

1. Patents ⬤⟿328—No. 1,345,172, claims 8 and 9, for improvement in wagon loaders, held invalid, in view of prior art.

No. 1,345,172, claims 8 and 9, for improvement in wagon loaders, held invalid, in view of prior art.

2. Equity ⬤⟿87(1)—Courts of equity take cognizance of statutory bars.

Courts of equity take cognizance of statutory bars, but likewise of general equitable principles, and, if a statutory bar presents itself to the granting of the relief prayed, the bill will be dismissed, but the court will apply the equitable doctrine of laches.

3. Equity ⬤⟿87(1)—Equity will sustain plea of laches, when action at law is barred by statute.

Equity follows the law, and will sustain a plea of laches, when an action at law is barred by statute.

4. Patents ⬤⟿140—Application for reissue brings whole invention before Patent Office coram judice.

Application for reissue patent brings whole invention before Patent Office coram judice.

5. Patents ⬤⟿136, 138(1)—Time when and extent to which applicant may remold or expand claims are determined on equitable principles.

Questions of how far and when applicant should be permitted to remold or expand the claims of his patent are determined on equitable principles.

6. Patents ⬤⟿147—Reissue patent, on application more than two years after date of invention and commercial exploitation, held not invalid, because of bar of statute or of laches.

Reissue patent, issued on application more than two years after date of invention and commercial exploitation, held not invalid, because of the bar of the statute or of laches.

7. Patents ⬤⟿1—Patent laws apply to things, not to abstract principles of mechanical operation.

The patent laws have application to things, not to abstract principles of mechanical operation.

8. Patents ⬤⟿16—Patentee must have devised a thing of his invention.

A patentee must have devised a thing of his invention.

9. Patents ⬤⟿99—Invention must be described, so that person skilled in art may construct it.

Patentee must describe the thing devised, so that those skilled in the art will be able to construct it when the patent has expired, and all may know on what they are not permitted to infringe while the patent has life.

10. Patents ⬤⟿36(2)—Commercial success of device, due to adaptability to do its work, held not evidence of invention.

Commercial success, where due to adaptability of the device to do its work, held not evidence of invention, not otherwise appearing.

In Equity. Bill by the George Haiss Manufacturing Company, Inc., against the Link Belt Company. Decree for defendant.

Henry D. Williams and Howard M. Morse, both of New York City, and Robert M. Barr, of Philadelphia, Pa., for plaintiff.

Howson & Howson, of Philadelphia, Pa., and Samuel E. Darby, of New York City, for defendant. .

DICKINSON, District Judge. This cause concerns letters patent No. 1,345,172, issued April 26, 1919, to George Haiss, for an improvement in wagon loaders. These letters were surrendered August 15, 1921; and letters patent, reissue No. 15,515, issued January 2, 1923.

[1] The conclusion reached is that claims 8 and 9 of the patent are invalid, in view of the prior art. Behind every legal complaint made there is a grievance felt and a wrong voiced. The genesis of the right which the plaintiff asserts and the wrong of which it complains is that its assignor designed an improved wagon loader and procured the issue of his original letters patent to protect him in the exclusive right to make, use, and vend it. The success of the business of marketing the loader depended largely upon the practical assertion and enjoyment of a monopoly of the right to sell it. This called for a review of the claims of the original patent, which being thought to be inadequate to the full protection of the patent, reissued letters were taken out, with a fuller and broader statement of the claim to invention.

The complaint against the defendant is that, as soon as the plaintiff's make of loader made its appeal to buyers, the defendant, in order to meet it in competition, boldly copied its distinctive features and thus sought to forestall it in the market. The only legal justification of this is a successful attack upon the validity of plaintiff's patent. If the claims of the patent in issue are but a restatement of the possessions of the prior art, the defendant cannot be held to be guilty of a legal wrong, no matter how strongly the plaintiff may feel the trespass upon what it thought to be its exclusive field.

The controversy before us is presented in claims 8 and 9 of the reissued letters. The

experience of this claimed invention in the Patent Office, as disclosed by the file wrapper, presents a helpful commentary upon the inventive merits of what the patentee accomplished, and obtrudes the question of the existence of a legal obstacle to a finding of the validity of the patent. The right to the monopoly awarded by the patent laws cannot be asserted to anything of which the patentee is not the inventor, in the sense of having originated the patentable idea embodied in it, nor can a valid patent issue for what belongs by dedication to the public, evidenced by more than two years' commercial use of it prior to the application for the patent. In order to meet the averment of a prior use, the date of invention and its commercial exploitation was pushed back to a time more than two years before the application for the reissued patent. Had the plaintiff's loader been in public use and on sale in the United States for more than two years before the original application for a patent, it is admitted that no valid letters could issue, and the defendant asserts that the same principle applies to reissued patents. For this the following cases are cited: Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491; Webster v. Splitdorf, 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792; Westinghouse, etc., Co. v. Jeffrey, etc., Co. (C. C. A.) 22 F.(2d) 277; MacBeth v. General Electric (C. C. A.) 246 F. 695.

[2] We must not lose sight of the truth that courts of equity take cognizance, of course, of statutory bars, but likewise of general equitable doctrines. If a statutory bar presents itself to the granting of the relief prayed, the bill asking for it will be dismissed; but the court, as a court of equity, will likewise apply the equitable doctrine of laches. [3-6] It is furthermore true that "equity follows the law," and will sustain a plea of laches when an action at law is barred by statute. The reason for this lies on the surface, but it in no wise obscures the distinction between laches and the application of a statutory bar. Both alike rest upon the "interest reipublicæ ut sit finis litium" maxim; but equity debars a proceeding because it ought to be shut out; a statute bars the action on a legislative ipse dixit. Here we are dealing with a statutory bar, which is let down only if the applicant has permitted more than two years to elapse between a public commercial use and the date of his application. The application brings the whole invention before the Patent Office

coram judice. How far and when the applicant should be permitted to remold or expand the claims of his patent are determined upon equitable principles. The bar of the statute does not ipso facto automatically apply. When the cited cases are read with this distinction in mind, no one of them supports the defendant in the position taken, and we refuse to rule the reissued patent to be invalid, because of the bar of the statute or of laches.

What the original application was and what became of it are, however, still very pertinent inquiries, because of their bearing upon the claims finally allowed. Plaintiff and defendant are in agreement upon the elements which make up claims 8 and 9. Claim 8 may be discussed as typical. It is a combination claim, every element in which was old. The patentee draws a fairly clear picture of what he had conjured up in his own mind. It was an improvement upon existing loaders. The primary idea was that every operation called for should be continuously automatic until the whole work was done. A special feature was that the improved loader should be adapted to be used when the material to be moved was "in a pile," so that, as "the pile" shifted its relative position, as parts of it were progressively removed, the loader would be shifted to the required new position. The final thought was that the material should be prepared for easy entrance to the buckets of the conveyor, by being moved directly into the path and in reach of the bucket movement. The remainder of the description is devoted to the details of the loader in its mechanical construction and operation.

We may pause here to note that there is nothing in the original application to suggest that the mind of the inventor had been directed to the character of the thrust with which "the digging elements" operated upon "the pile of material," the feature with which this trial has chiefly concerned itself. Upon this application 10 claims were based, in absolute silence respecting the above referred-to feature. All of these claims were rejected on references to prior patents. The claims were then revamped, reducing the number to three. These were expressly limited to the described mechanical construction in the statement: "The new claims submitted have been drawn to the specific construction of applicant's device, and in view of the art cited."

We interpret this to mean that application of the doctrine of equivalents was ex-

pressly repudiated. Incidentally and passim, these claims would seem to be as narrow as they could well be drawn, and to make the criticism that they were too broad, as the basis for a reissued patent, difficult to understand. The truth would seem to be that the claims were rewritten, so as to broaden them and make room for the application of the doctrine of equivalents. The application for a reissue was made August 13, 1921, and filed August 18, 1921, almost exactly 16 months after the original issue. The named objectives of the invention are left unchanged. The number of claims was again expanded from 3 to 10. The new claims (except 4 and 5) were all rejected; 8 and 9 on references to prior patents.

Upon reconsideration, the argument now pressed upon us was urged without avail upon the Examiner, and the claims again rejected, but upon a second reconsideration were allowed in the form in which they now appear.

[7-9] It is not difficult to understand the feelings of the owners of the patented loader, nor to sympathize with them in their complaint against the defendant. Plaintiff's loader was a success, and commanded, if not *the* market, a large one. The defendant was under commercial compulsion to give to its customers what the plaintiff supplied to those who bought from it. This the defendant *did, and did it because* the plaintiff had pointed out the road, by following which commercial success was to be reached. If there were any infringement of claims 1, 2, or 3, the mind could rest with satisfied assurance of a correct judgment, upon the thought of a decree in favor of the plaintiff. If, however, there is no valid claim to invention beyond the specific construction covered by the original letters patent, we cannot give to plaintiff the reward of a monopoly which the law denies. The patent laws have application to "things," not to abstract principles of mechanical operation. One reason for the rule is that otherwise there would be no practical limit to the application of the doctrine of equivalents.

A patentee must not only have devised a "thing" of his invention, but he must patent the "thing" thus devised, and describe it so that those skilled in the art will be able to construct it (when the patent has expired), and all may know upon what they are not permitted to infringe while the patent has life. There is, of course, a difference between a push and a thrust, or blow, which is readily recognized, although the word "impact" may

not be happily chosen to express the thought of the latter, to the exclusion of the former. When we have the concept of the thing to be "impacted" as having location, and of the "impacting" thing as moving toward the place of impact, whether the resultant is a push or shove, or whether it is a thrust, hit, or blow, depends upon the length and pace of the movement. In golfing parlance, it is the length of the stroke which distinguishes a push or shove from a hit. If the club is against the ball, or removed from it an inappreciable distance, when the force is exerted, the result is a push or shove; when the club is withdrawn an appreciable distance from the ball, and brought down upon it with some speed, a blow or hit is delivered, or a stroke made. The pace of movement of the impacting thing enters into the difference. When a spiral with a continuous thread or perimeter is brought against a "pile of material," and when spaced spokes extending from a revolving hub are brought against like material, a difference in action and operation will be recognized. When, however, the spiral edge is cut into sections, so as to make of it a series of blades or paddles, it is difficult to understand how they differ in operation from other blades and paddles having the like spacing. Calling the one an "interrupted spiral," and the other blades or paddles in spiral form, would not seem to have much effect on the operation of either.

The argument addressed to us, enticing as it is in form and substance, impresses us as one admitting that, if the "thing" claimed to have been invented were described in terms of what it accomplished, invention would be denied to it, because of no advance upon the prior act. This being so, the expedient of describing it in terms of its principles of operation does not give validity to claims, for the double reason that the mode of operation ascribed to the device is more fanciful than real, and, even if real, the operation is that of devices of the prior art, and the differentiation merely a change in verbiage.

[10] Claims 8 and 9 are held to be invalid in view of the prior art. We are thus unable to find invention in support of these claims, nor do we think the doctrine applicable that acceptance of a device by the trade as new and useful will be deemed evidence of invention, not otherwise appearing. The reception accorded plaintiff's loader is fully accounted for by the fact that it was well constructed mechanically and adapted to do

its work. This is a tribute to a good loader, not evidence of invention.

A formal decree in conformity with these views may be submitted.