## GEORGE HAISS MFG. CO., Inc., v. LINK BELT CO.

Circuit Court of Appeals, Third Circuit.
February 26, 1929.

No. 3948.

Robert M. Barr, of Philadelphia, Pa. (Henry D. Williams, Howard M. Morse, and Williams, Rich & Morse, all of New York City, of counsel), for appellant.

Howson & Howson, of New York City (Samuel E. Darby, of New York City, of counsel), for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and JOHNSON, District Judge.

BUFFINGTON, Circuit Judge. In the court below George Haiss Manufacturing Company brought suit charging the Link Belt Company with infringement of claims 8 and 9 of the patent, now owned by it, No. 1,345,172 (reissue No. 15,515 applied for August 15, 1921), issued June 29, 1920, to George Haiss for a wagon loader. On final hearing the court held said claims were invalid in view of the prior art, and from a decree dismissing its bill plaintiff appealed. The wagon loader made by the defendant prior to Haiss' patent shows the most advanced state of the wagon loading art. In it was a wagon on which was mounted an endless conveyor whose nose or end projected at an angle from the wagon rear end so as to reach the ground. From this lower end of the conveyor a revoluble shaft extended at right angles to the conveyor. On the revoluble shaft, at each side of the conveyor, was mounted a spiral side conveyor adapted to revolve when the wagon was moved forward to a pile of coal, sand, or other substance desired to be loaded on the wagon; and as the conveyor encountered the pile the spiral pushed whatever came into its path sideways to the conveyors, which in turn lifted the dirt, etc., into the wagon. Haiss improved on this loader by a change of mechanism which, while simple, was so effective mechanically and so superior to the old type of wagon loader as to supersede it entirely. In that respect, and we agree with its finding, the lower court said: "It is not difficult to understand the feelings of the owners of the patented loader, nor to sympathize with them in their complaint against the defendant. Plaintiff's loader was a success, and commanded, if not the market, a large one. The defendant was under commercial compulsion to give to its customers what the plaintiff supplied to those who bought from it. This the defendant did, and did it because the plaintiff had pointed out the road, by following which commercial success was to be reached."

We have no question of infringement if the claims are not invalid in view of the prior art, as was held by the court below. The functional advance Haiss made was in dispensing with shoveling and making the loader automatically self-shoveling as the wagon was pushed forward. This he did by placing on the revoluble shafts blades or feeding paddles adapted to dig, and so angularly inclined as to throw the dug and loosened dirt, etc., in front of the conveyor. This feature he pointed out in his specification as follows:

"A further object of the invention is to provide means for feeding the piled material laterally into the path of the buckets of the elevating conveyor. * * *

"As the machine is continuously driven into the pile of material to be operated upon, it will be seen that the digging elements 37 will segregate the material and move it forwardly with respect to the travel of the machine to a point approximately parallel with the longitudinal center of the machine, in which position it will be engaged by the buckets 35 of the conveyor or elevator and removed"

—and embodied in claims 8 and 9 in the reissue. Conveyors were old. Feeders which fed material from the side by means of a revoluble shaft provided with a worm had been in use for years. Pushing material along a trough by a spiral was common practice. In spite of all these well-known elements, no one seems to have brought into the wagon loading art the dispensing with hand shoveling by mechanically digging the material and throwing it upwardly and laterally into the pathway of the buckets of the advancing conveyor. In view of the merit of that contribution, the simplicity of the step which no one pointed out, we are of opinion the change was inventive.

We are have considered the effect of the reissue of the patent. When Haiss made his application for a patent, he made some broad claims which were rejected. He acquiesced in the objections and took out a patent. Within a couple of years he discovered that he had not claimed the full scope of the invention he had disclosed in his specification and shown in his drawings. Thereupon he used the same specification, with the unimportant addition of two lines which counsel concede was immaterial in this case, and the same identical figures, and made application for a reissue with a grant of claims 8 and 9, among others, here in controversy. In doing so he availed himself of a statutory right of reissue, the general principles of which are that one cannot expand his application to include something not disclosed in his first application, and he cannot by reissue affect rights which have accrued since the grant of his patent. We have no such factors in this case. Indeed, it is shown that as far as the defendant is concerned, it did not begin its alleged infringing acts until seven years later, and its chief engineer testified that he never knew of the existence of the patent. Consequently, there is no question of intervening rights, estoppel, and the like. Under

434

the statute; the reissue dates back to the original patent and expires with it. We therefore find nothing to preclude the patentee having advantage of claims 8 and 9 which were granted by the reissue.

The decree below is therefore vacated, and the case remanded, with instructions to enter a decree adjudging claims 8 and 9 valid and infringed.

WOOLLEY, Circuit Judge (dissenting). The invention relates to one phase of the broad and highly developed art of mechanical conveyors. I regard the claims in suit invalid in view of the general art. I agree that, if valid, they were infringed.