**GEORGE HAISS MFG. CO., Inc., v. LINK-BELT CO., and three other cases.**

**Nos. 3948, 4439, 4685, 4697.**

Circuit Court of Appeals, Third Circuit.

Oct. 21, 1932.

Rehearing Denied March 3, 1933.

Robert M. Barr, of Philadelphia, Pa. (Henry D. Williams and Howard M. Morse, both of New York City, of counsel), for George Haiss Mfg. Co., Inc.

Howson & Howson, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for Link-Belt Co.

Before DAVIS, Circuit Judge, and McVICAR and AVIS, District Judges.

AVIS, District Judge.

These cases involve three distinct questions. A statement of the prior proceedings is necessary for the purpose of intelligently stating the issues involved in the present appeals.

George Haiss, claiming to be the inventor of a new and useful improvement in wagon loaders, on April 26, 1919, made formal application to the Commissioner of Patents of the United States for a patent thereon, and on June 29, 1920, letters patent of the United States No. 1,345,172 were duly issued to him. Subsequently, on or about August 15, 1921, the said Haiss surrendered the aforesaid letters patent and made due application for a reissue thereof, and on January 2, 1923, letters patent reissue No. 15,515 were granted to him. By assignment, executed on about February 20, 1926, said letters patent reissue No. 15,515 became the property of the George Haiss Manufacturing Company, Incorporated (hereinafter called Haiss Company), one of the parties to these appeals.

Suit was brought under the patent by Haiss Company against Link-Belt Company, on or about March 23, 1926, alleging infringement of the said patent, and praying for injunction, accounting, and damages. This action was heard in the United States District Court for the Eastern District of Pennsylvania, and a decree entered holding the patent to be invalid. 27 F.(2d) 397. On appeal to this court, the decree was reversed, the patent held to be valid and infringed by Link-Belt Company. 31 F.(2d) 432. The decree below was vacated, and the cause remanded, with instructions to enter a decree adjudging claims 8 and 9 of the patent valid and infringed, and the mandate directed the District Court to take such further proceedings in said cause as ought to be had, according to right and justice, and the laws of the United States.

On this mandate the District Court entered a decree in accordance with the conclusion of this court, ordering a perpetual injunction, enjoining the Link-Belt Company from "making, using or selling or aiding or abetting others in the making, using or selling of any apparatus embodying the said patented inventions or any part thereof in violation of the rights of the plaintiff as aforesaid."

This decree was dated April 5, 1929.

The decree further directed the payment of costs, and referred the matters to a master to make an accounting of the profits derived by Link-Belt Company, and the damages sustained by Haiss Company, by reason of said infringement.

The master commenced the taking of testimony on this reference on May 13, 1929, and made his report on January 29, 1931.

On January 21, 1930, application was made to this court for leave to file a bill in the nature of a bill of review, and on that date an order was made by this court authorizing the District Court to entertain a motion for leave to file such a bill. Application was subsequently made to the District Court, and that court, on February 5, 1930, granted the application, "to the extent that defendant is permitted, as under an appropriate amendment of its answer in this cause, to adduce evidence as to the said newly discovered matters, and plaintiff is permitted to adduce evidence in opposition thereto."

Evidence was taken under this order and presented to this court at the argument, under the claim that the patent in suit was anticipated by prior German patents, not produced to, or considered by, this court, upon the disposal of the original appeal herein; the Link-Belt Company endeavoring to have this court reverse the original decision hereinbefore referred to.

The District Court returned to this court the evidence taken on its order, and reported to this court, among other things, as follows: "In the character of Master, we find due diligence upon the part of the defendant in presenting this new matter, but in respect to its materiality, we are of opinion, and so find, that there is nothing in this new evidence sufficient to change the opinion formed in respect to the validity of the reissued Letters Patent."

On January 29, 1930, the Haiss Company presented its petition to the District Court, alleging that the Link-Belt Company, since the issuance of the injunction, "has sold and is continuing to sell repair parts for use in the infringing wagon loaders embodying the invention of said letters patent which were sold by the defendant prior to the service of said injunction, thereby in violation of said injunction, aiding and abetting others in the unlawful using of said infringing wagon loaders."

Upon this petition the District Court granted an order to show cause. Testimony was taken on this order, and the Link-Belt Company adjudged guilty of contempt and fined $1,500 for the use of the plaintiff.

The matters involved in this court make it advisable and necessary that they should be considered separately:

What is the effect of the testimony taken, and the facts submitted, under the orders permitting the amendment to the answer by way of review, setting up the anticipation of the German patents?

The opinion of this court on the original appeal, written by Judge Buffington and reported in 31 F.(2d) 432, holds the patent valid and infringed, and with relation to invention he said:

"The functional advance Haiss made was in dispensing with shoveling and making the loader automatically self-shoveling as the wagon was pushed forward. This he did by placing on the revoluble shafts blades or feeding paddles adapted to dig, and so angularly inclined as to throw the dug and loosened dirt, etc., in front of the conveyor. * * *

"In spite of all these well-known elements, no one seems to have brought into the wagon loading art the dispensing with hand shoveling by mechanically digging the material and throwing it upwardly and laterally into the pathway of the buckets of the advancing conveyor. In view of the merit of that contribution, the simplicity of the step which no one pointed out, we are of opinion the change was inventive." 31 F.(2d) 432, 433.

Judge Kirkpatrick in disposing of another action brought in the District Court for the Eastern District of Pennsylvania, between the same parties (2 F. Supp. 728), carefully analyzed the German patent set up here, and concluded, after a careful comparison, that the German patent did not anticipate, and that the Haiss patent is valid. This opinion was adopted by Judge Dickinson, as master, in the review proceedings.

We adopt the reasoning set forth in this opinion, and hold, therefore, that the facts submitted are not sufficient to justify any change of the decision heretofore rendered by this court.

The next matter relates to the cross-appeals on the question of profits and damages on accounting.

The basis of this accounting, as to charges against the defendant, arises out of the conclusion of the court below that the Link-Belt Company was liable for profits received on the loaders sold by it; and also on profits received from the sale of repair parts. No appeal was taken from the refusal of the District Court to allow damages.

The Link-Belt Company claims that, under the decision of Judge Buffington, it should account for profits upon sales of parts used in replacement or repair of the digging or paddle attachment, which consists of placing on the revoluble shafts, blades, or feeding paddles, adapted to dig, and so angularly

inclined as to throw the dug and loosened dirt to the conveyor.

We are satisfied that the Link-Belt Company should account for, and pay, all profits received by it in the sale of the eighty-one loaders, which contained the device infringing the Haiss Company patent, and that it should also account for, and pay, all profits received by it in the sale of parts relating to the said blades or feeding paddles, but that it is not liable for profits on parts furnished for other replacement or repairs of the loading apparatus, or the machinery, which is standard and not covered by the patent in suit. We hold that the sale of these standard parts does not constitute contributory infringement, in view of the fact that, if the loaders in question had been originally manufactured and sold by the Haiss Company, the Link-Belt Company would not have been precluded from furnishing incidental repair standard parts. The Haiss Company, being entitled to receive the full profits of infringing loaders sold, cannot complain as to parts sold not affecting the actual patented portion of the machine.

Having arrived at this conclusion, the next problem is the method of calculating the profits.

The evidence discloses, and the parties apparently agree, that from June, 1925, to March, 1929, eighty-one complete infringing machines were manufactured and sold by Link-Belt Company to its customers; that the total receipts from these sales was $303,405.65. It is conceded by the Link-Belt Company that during this period repair parts to paddles, etc., were sold to the amount of $1,810.34; that the manufacturing and the claimed selling cost of these parts was $1,632.31, leaving a profit of $178.03.

The correctness of this concession may be challenged, and we have no way of confirming the statement, as the master reported on the total sales, including those herein disallowed, because, in our view, not contributing to the infringement.

The more difficult question is the method of ascertaining the costs of production and marketing of the infringing articles. The Link-Belt Company made its statements and produced its evidence on the theory that the proper method was to include as costs the actual amounts paid for materials and direct labor, and adding the overhead and sales expenses, based upon a certain percentage of labor costs, applied to the various departments of its complete operations, and the master adopted this theory.

Upon review, after exceptions, the District Court, after discussing the testimony and the master's report, set up its own theory, and, it being demonstrated, by the evidence produced, that the Link-Belt Company, during the period of infringement, made a profit on all of its output of 13.3 per cent., applied that percentage to the gross receipts from wagon loaders sold, stated as $303,405.65, and came to the conclusion that $40,354.95 was the amount to be accounted for as profits on the infringing machines marketed in violation of the Haiss Company's patent.

The appeals are, of course, from the decision of the District Court.

The master permitted the Link-Belt Company to charge as a part of sales cost a percentage applied to actual labor cost on the infringing machines.

This method appears to be approved in the case of Computing Scale Co. v. Toledo Computing Scale Co. (C. C. A. 7) 279 F. 648–657, 658. In that case the District Court allowed certain expenses by this style of computation, but this question, except in a general way, was not passed upon by the Circuit Court of Appeals.

There was no testimony before the master, with relation to the disputed items, showing what proportion of the charges made on the percentage of labor basis were directly attributable to the extra cost of producing the infringing loaders.

In instances where the infringer, engaged in the production and sale of other articles, has failed to keep accurate costs of production, and is desirous of charging to the profits of the infringing business a certain portion of overhead, and such effort is contested, the burden is upon the infringer to segregate the charges and to prove that the expenses were made necessary by the extra cost of producing the infringing devices, or at least to show specifically which portion of them is due to manufacture of infringing articles. And, unless so specifically proven, allowances will not be made. Krentler-Arnold Hinge Last Co. v. Leman (D. C. Mass.) 24 F.(2d) 423, 424.

See, also, Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Kissinger-Ison Co. v. Bradford Belting Co. (C. C. A. 6) 123 F. 91.

The figures reported by the master were not supported in full by testimony of this character.

In his opinion Judge Dickinson clearly

states the difficulties attendant upon an effort to endeavor to untangle the accountants' statements of the overhead costs which the Link-Belt Company claimed to be chargeable.

And it being admitted that the said Link-Belt Company is unable to definitely state the actual overhead costs of manufacture, and further that no separate and distinct account was kept of overhead properly chargeable to loaders, and it being impossible to correctly and intelligently calculate this actual cost from the proofs submitted, or to equitably apportion the various overhead expenses, we conclude that a fair way of arriving at the reasonable profits is to follow the decision of the District Court, in principle, in holding that a fair method is to charge the Link-Belt Company with the average clear profit earned by it, in all lines of business, and apply this percentage average to the gross sales of the loaders for the period during which the infringing wagon loaders were marketed.

We are unable to find any precedent upholding this method of calculation of profits, but the principle of apportioning overhead on the percentage that the receipts from infringing sales bears to the total receipts of the business of the company for the same period is approved in the following cases: National Folding-Box & Paper Co. v. Dayton Paper Novelty Co. (C. C. S. D. Ohio W. D.) 95 F. 991, 993; Riverside Heights Orange Growers' Ass'n v. Stebler (C. C. A. 9) 240 F. 703, 710; Auto Vacuum Freezer Co., Inc., v. William A. Sexton Co., Inc. (D. C. S. D. N. Y.) 250 F. 459, 462; Philadelphia Rubber Works Co. v. U. S. Rubber Reclaiming Works et al. (C. C. A. 2) 277 F. 171, 179; Starr Piano Co. v. Auto Pneumatic Action Co. (C. C. A. 7) 12 F.(2d) 586, 589. The principle adopted in these cases charges as overhead expense, added to cost of manufacture, the proportion that the infringing business bears to total business of the infringer.

Under all of the circumstances of this case, we are satisfied that the method adopted by the District Court is equitable and just.

Because of the fact that we hold the sale of parts, to a large extent, at least, not to be a contributing infringement, the profits on such latter sales will be confined to the gross receipts for parts used to repair or renew the paddle arrangement covered by the patent.

The decree as to accounting is affirmed as it affects the profits decreed on complete machines, and as to the profits on parts is reversed, with instructions to take such further proceedings as may be necessary, and to apply the percentage to such gross receipts from sale of parts as are held in this opinion to be infringing.

The contempt proceedings are last to be considered. In view of the holding herein, that the parts furnished by Link-Belt Company for use on the infringing loaders did not constitute contributory infringement unless applied to the paddle arrangement, and the fact, as appears by the evidence, that no parts of the latter character were furnished after the issuance of the injunction, the decree of the District Court, holding the Link-Belt Company in contempt, is reversed, and the fine imposed is ordered remitted.